IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD KONOWAL, SR. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LOWE'S HOME CENTERS, LLC | : | NO.  23-2642 |

## MEMORANDUM

**Padova, J.**                                                                                      **December 9, 2024**

Plaintiff Richard Konowal, Sr. brought this action against his former employer, Lowe's Home Centers, LLC ("Lowe's") after his employment with Lowe's was terminated.  Plaintiff contends that he was terminated by Lowe's because of his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq.  Lowe's has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.  For the following reasons, we grant the Motion.

## I.    BACKGROUND

The record evidence shows that Plaintiff began his employment at Lowe's on November 4, 2019, when he was 61 years old.  (Konowal Dep. (Def. Ex. 1) at 12, 20.)  Plaintiff worked at Lowe's' Langhorne, Pennsylvania store from November 4, 2019 through April 29, 2022 as a Merchandising Assistant Store Manager ("ASM").  (Id. at 20; Def. Ex. 6 at 2 of 6.)   David Small was the Store Manager of the Langhorne Lowe's store at the time Plaintiff was hired.  (Konowal Dep. at 168; Small Decl. (Def. Ex. 3) ¶¶ 1, 10.)  Small resigned in early February 2022 and was replaced by Brandon Wysin.  (Small Decl. ¶ 10; Konowal Dep. at 53.)

On March 15, 2022, Wysin issued Plaintiff a Final Warning following a March 12, 2022 incident in which Plaintiff failed to secure one of the store's register bags in the store safe, signed off on an incorrect Till Log that indicated that all of the bags were in the safe, and left the

administrative office without shutting the safe or alarming the office door.  (Konowal Dep. at 83-86; Def. Ex. 9.)  Wysin terminated Plaintiff on April 29, 2022 following an incident in which a customer called the store's Customer Care hotline to complain that Plaintiff had been verbally abusive to him and Plaintiff closed the complaint without ensuring that someone responded to the customer's complaint.  (Def. Ex. 6; Konowal Dep. at 121-127.)  Wysin discovered this incident when the customer contacted him because he had not received any response to his Customer Care complaint.  (Def. Ex. 6 at 4 of 6.)

The Complaint asserts one claim for relief against Lowe's for age discrimination in violation of the ADEA.  Lowe's seeks the entry of summary judgment in its favor with respect to this claim on the grounds that (1) Plaintiff does not have evidence that would establish a prima facie claim of age discrimination and (2) Plaintiff does not have evidence that would establish that its non-discriminatory reason for terminating Plaintiff's employment was pretext.

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.  In ruling on a summary judgment motion, we "construe the evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion."  Jacobs v. Cumberland Cnty., 8 F.4th 187, 192 (3d Cir. 2021) (citing Bland v. City of Newark, 900 F.3d 77, 83 (3d Cir. 2018)).

2

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court[] that there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response "must support the assertion [that a fact is genuinely disputed] by (A) citing to particular parts of materials in the record . . . or (B) "showing that the materials [that the moving party has cited] do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

We will grant summary judgment if the nonmoving party fails to respond with a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "'While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla.'" Galli v. New Jersey Meadowlands Comm'n, 490 F.3d 265, 270 (3d Cir. 2007) (quoting Hugh v. Butler Cnty. Fam. YMCA, 418 F.3d 265, 267 (3d Cir. 2005)). However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 252 (3d Cir. 2010) (citing Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989)).

III.    **DISCUSSION**

A.    Prima Facie Case

"The ADEA prohibits age discrimination in employment against an individual over age 40." Barber v. CSX Distribution Servs., 68 F.3d 694, 698 (3d Cir. 1995) (citing 29 U.S.C. § 623(a)(1)). "Because the prohibition against age discrimination contained in the ADEA is similar in text, tone, and purpose to the prohibition against discrimination contained in Title VII, courts routinely look to law developed under Title VII to guide an inquiry under the ADEA." Id. (citing Maxfield v. Sinclair Int'l, 766 F.2d 788 (3d Cir. 1985)). Consequently, we analyze Plaintiff's ADEA claim under the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Fowler v. AT&T, Inc., 19 F.4th 292, 298 (3d Cir. 2021) (citing Barber, 68 F.3d at 698). Under this framework, "[t]o survive summary judgment, [Plaintiff] must present a claim that on first sight has enough merit to proceed (called a *prima facie* case)." Id. at 298-99 (citation omitted). In order to establish a prima facie case of discrimination in violation of the ADEA, Plaintiff "must show that [he] was (1) . . . over the age of 40 . . ., (2) subject to an adverse employment action, (3) qualified for [his] position, and that (4) the adverse employment action was because of . . . [his] age. Id. at 299 (citing Willis v. UPMC Child.'s Hosp. of Pittsburgh, 808 F.3d 638, 644 (3d Cir. 2015)). Plaintiff may establish the fourth element of the prima facie case of age discrimination by showing that he "'was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus.'" Gress v. Temple Univ. Health Sys., 784 F. App'x 100, 104 (3d Cir. 2019) (quoting Smith v. City of Allentown, 589 F.3d 684, 689 (3d Cir. 2009)). "If [Plaintiff] is able to make out a *prima facie* case, the burden of production shifts to [Lowe's] to provide a legitimate, non-discriminatory reason for its actions." Fowler, 19 F.4th at 299 (citing Walton v.

<u>Mental Health Ass'n</u>, 168 F.3d 661, 668 (3d Cir. 1999)).  If Lowe's provides a legitimate, non-discriminatory reason, Plaintiff "may prevail at summary judgment only if [he] has evidence that [Lowe's'] response is merely a pretext, meaning evidence that could cause a jury 'either [to] (1) disbelieve the employer's articulated legitimate reasons[,] or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'"  <u>Id.</u> (3d and 4th alterations in original) (quoting <u>Walton</u>, 168 F.3d at 668).

Lowe's concedes, for the purposes of the instant Motion, that Plaintiff has presented sufficient evidence to "establish the first three elements of a *prima facie* case of age discrimination."  (Def. Mem. at 6.)  However, Lowe's argues that it is entitled to summary judgment because Plaintiff has not proffered any evidence that he was terminated because of his age.  Specifically, Lowe's contends that the evidence of record shows that Plaintiff was replaced by an older individual.

Lowe's admits that, after it terminated Plaintiff, Bianna Heackock, Lowe's' Area Human Resources Business Partner, brought Bobby Sue Hanlon, an ASM at another Lowe's store, to the Lowe's Langhorne store to do Plaintiff's job.  (Wysin Dep. (Def. Ex. 7) at 290-92; Heackock Decl. (Def. Ex. 25) ¶¶ 4-6.)  Hanlon was 40 years old in 2023.  (Wysin Decl. (Def. Ex. 8) ¶ 28.)  Lowe's maintains that Hanlon filled in for Plaintiff on a temporary basis and performed Plaintiff's role at the Langhorne store for approximately eight weeks.  (Wysin Dep. at 290-91, 298.)  While Hanlon was performing Plaintiff's job at the Langhorne store, Wysin posted and interviewed applicants for Plaintiff's job, ultimately replacing Plaintiff with Mitch Mohl, who is older than Plaintiff.  (Id. at 290; Konowal Dep. at 148-49.)  Lowe's asserts that Wysin interviewed Mohl in May 2022 and hired him for Plaintiff's position as Merchandising ASM in

June 2022.  (Wysin Decl. ¶¶ 32-33.)  Mohl had previously worked under Plaintiff as Department Supervisor in the plumbing department of the Langhorne store.  (Konowal Dep. at 149.)

Lowe's argues that temporarily replacing Plaintiff with a much younger individual (Hanlon) does not satisfy the fourth element of a prima facie case because Plaintiff was ultimately replaced by an older individual.  Lowe's relies on Maciejewski v. Community Bank & Trust Co., Civ. A. No. 08-2214, 2012 WL 4461076 (M.D. Pa. Sept. 25, 2012), in which the plaintiff, who was 57 years old, brought an ADEA claim after being fired.  Id. at *1.  The plaintiff was originally replaced on a temporary basis by a younger employee, but after six months she was permanently replaced by a 58 year old employee.  (Id.)  The court noted that, while "[p]ermanent replacement of a 57-year-old employee by a 40-year-old employee would be sufficient to create an inference that age discrimination has taken place . . . a temporary replacement is insufficient to create an inference of bias."  Id. at *5 (citing Monaco v. American Gen. Assurance Co., 359 F.3d 296, 300 (3d Cir. 2004)).  The Maciejewski court determined that, "[i]n light of the fact that the plaintiff's position was ultimately filled by someone comparable in age to the plaintiff, it is difficult to view the temporary replacement" by a younger individual as an objectively clear method of establishing age discrimination.  Id.

Plaintiff argues that we should deny the Motion with respect to this argument because there is record evidence that Hanlon was his long-term, rather than temporary, replacement.  Plaintiff relies on the Declaration of Chris Feoli, who was the night operations supervisor in Lowe's Langhorne store from early April 2022 until the end of November 2022.  (Feoli Decl. (Pl. Ex. D) ¶¶ 3, 5.)  In his position as night operations supervisor, Feoli was in weekly contact with all of the Langhorne store's ASMs and supervisors.  (Id. ¶ 7.)  Feoli states in his Declaration that when Plaintiff was terminated, Bobby Sue Hanlon filled Plaintiff's ASM position in the

Lowe's Langhorne store. (<u>Id.</u> ¶ 8.) Feoli further declares that Hanlon was still working in Plaintiff's ASM position in November 2022, when Feoli left his position at the Langhorne Lowe's store. (<u>Id.</u> ¶ 9.)

Plaintiff also contends that the record evidence shows that Mohl was not hired by Wysin to replace Plaintiff as Merchandising ASM. Feoli states in his Declaration that Mohl never worked as an ASM in Plaintiff's position in the Langhorne store. (<u>Id.</u> ¶ 10.) Rather, he was made the ASM in lumber/millwork in June or July 2022. (<u>Id.</u> ¶ 11.) Feoli also declares that Mold took medical leave at some time after being made ASM and was assigned to light duty work after he returned in September 2022. (<u>Id.</u> ¶ 12.) Mohl was later transferred to the Bensalem Lowe's store. (<u>Id.</u>)

Plaintiff further relies on the Declaration of Regina Masters, who worked for Lowe's in the Scheduling, Staffing and Administrative position under both Small and Wysin. (Masters Decl. (Pl. Ex. C) ¶¶ 1-2.) Masters states in her Declaration that after Plaintiff was terminated, "Bobby Sue Hanlon came over from the Lowe's northeast Philadelphia store to take over [Plaintiff's] merchandising ASM position." (<u>Id.</u> ¶ 5.) Masters further declares that Hanlon was still in the Merchandising ASM position in February 2023, when Masters went on disability leave. (<u>Id.</u> ¶ 7.) Thus, we find that there is record evidence that Hanlon was in the Merchandising ASM position months after Defendant claims that Mohl was hired for that job and months after Mohl left his ASM position for medical leave.

We conclude that Plaintiff has submitted sufficient evidence to create a genuine issue of material fact regarding whether he was permanently replaced by a younger person, Hanlon, after his employment with Lowe's was terminated. Consequently, we further conclude that there is a genuine issue of material fact regarding whether he has satisfied his obligation to establish the

fourth element of a prima facie case of age discrimination in violation of the ADEA. We therefore deny the Motion for Summary Judgment as to Defendant's argument that Plaintiff has failed to satisfy his obligation to establish a prima facie case of discrimination. See Fowler, 19 F.4th at 299 (citing Willis, 808 F.3d at 644); Gress, 784 F. App'x at 104 (quoting Smith, 589 F.3d at 689). Consequently, "the burden of production shifts to [Lowe's] to provide a legitimate, non-discriminatory reason for its actions." Fowler, 19 F.4th at 299 (citing Walton, 168 F.3d at 668).

       B.    Lowe's' reasons for Plaintiff's termination

Lowe's maintains that it terminated Plaintiff's employment for legitimate, non-discriminatory reasons, specifically, the conduct for which he was disciplined in the two months preceding his termination. Lowe's relies on the evidence of Plaintiff's conduct in connection with his March 15, 2022 Final Warning and his April 29, 2022 termination. The March 15, 2022 Electronic Corrective Action Report (eCAR) for the March 12, 2022 incident describes Plaintiff's conduct as follows: "On 3/12/2022, Rick signed a document stating that he had dropped a register bag into the safe[.] On the morning of 3/13, that bag that was signed off on was found still in the register having not been cleared from the night before." (Def. Ex 9 at 3 of 5.) The eCAR also explains how Plaintiff's conduct was discovered:

> On 3/13/22 at 6[:]40am Dawn was putting out the money for register 2 which is a safety till and found the bag of money in the drawer from the previous night. She came to me immediately to report it. I reviewed video[.] 9[:]54 head cashier Eric bagged up register 1[.] At 9[:]58 he walked back towards the front end with bag 1 and did not take Register 2's bag[.] At 9[:]48 ASM Rick started dropping bags in the cash office. 9:50pm he left out the room with the safe open and did not set the alarm. 10[:]08pm Rick returned to the room[,] dropped the rest of the bags and signed the clipboard [and] armed the room at 10[:]09pm[.]

(Id. at 5 of 5.) The eCAR also includes a copy of the Till Log worksheet, which indicates that the register bag from register 2 was placed in the safe by Plaintiff at 10:15 p.m. on March 12,

2022.  (Id. at 4 of 5.)  Plaintiff admitted during his deposition that he made a mistake by signing off on the Till Log worksheet as if he had dropped the bag from register 2 in the safe when he had not done so.  (Konowal Dep. at 85-86.)  Plaintiff also admitted to leaving the room with the safe open.  (Id. at 83-84.)

Lowe's also points to the Declaration of Svetlana Jewell, Director of Associate Relations for all Lowe's stores in the United States.  (Jewell Decl. (Def. Ex. 5) ¶ 1.)  Jewell states that "[t]he failure to secure the register bags and incorrect Register Til[l] Log are violations of the Company Assets and Records portion of the Associate Standards of Conduct policy."  (Id. ¶ 23.) Plaintiff's "failure to close the safe and set the alarm in the administrative office . . . is also a violation of the Company Assets and Records portion of the Associate Standards of Conduct policy as well as Lowe's Administrative Office and Safe Security policy."  (Id. ¶ 24.)  Jewell "support[s] the issuance of a Final Warning or Termination to Plaintiff in connection with the March 12, 2022 incident that ultimately resulted in his March 15, 2022 Final Warning."  (Id. ¶ 38.)  Jewell also states in her Declaration that the eCAR documentation of Plaintiff's March 15, 2022 Final Warning contains "multiple Class A violations" and that, according to Lowe's' Corrective Action Procedure matrix, "a Final Warning or Termination may be appropriate discipline for a Class A violation."  (Id. ¶¶ 21, 32.)

The eCAR related to Plaintiff's April 29, 2022 termination states that he was terminated because he "failed to meet the expectations of the role," "failed to follow through on multiple customer issues," and "failed to complete assigned tasks in a timely manner."  (Def. Ex.6 at 3 of 6.)  Wysin explained in the eCAR that Plaintiff was fired after Wysin received a call from a customer who complained about an experience with Plaintiff:

> On 4/25/22, I received a call from a customer named . . . .  He explained that he had a negative experience with the ASM, Rick Konowal, in which Rick had been

rude to him and called him a liar about a problem he was having with a riding lawnmower purchased in 2020.

The customer explained that he called our customer care line to file the complaint on 4/22. I logged into customer care management to look up the customer's info and noticed that the case had been closed out by Rick, without contacting the customer, despite the customer wanting to hear from another store manager[.]

When I discussed this with Rick, he explained that the customer is just trying to get his repairs for free and didn't like Rick's answer and wanted to get him in trouble. Rick should have partnered with myself or another ASM to speak with this customer rather than closing out the case and making the customer feel even more ignored[.]

(Id. at 4 of 6.)

Lowe's also relies on the Declaration of Svetlana Jewell, who has reviewed Plaintiff's termination eCAR. (Jewell Decl. ¶ 43.) She declares that "Plaintiff's closure of the April 22, 2022 Customer Care complaint wherein the customer complained about Plaintiff's own abusive conduct towards him (the customer) and Plaintiff closed the case without contacting the customer is alone grounds for termination regardless of any prior discipline." (Id. ¶ 44.) She further states in her Declaration that "Lowe's takes customer service extremely seriously as it is addressed in employee job descriptions and the Associate Standards of Conduct among other policies." (Id. ¶ 46.) Moreover, "[a] Lowe's associate may not dispose of or investigate a customer or employee complaint about themselves even if the complaint appears baseless." (Id. ¶ 47.) "With respect to the April 22, 2022 Customer Care complaint against Plaintiff, Plaintiff should have paired with either the Store Manager or another ASM to address the customer complaint and follow up with the customer." (Id. ¶ 48.) "Plaintiff's closure of the Customer Care case without contacting the customer resulted in the customer following up again to lodge yet another complaint." (Id. ¶ 49.) Jewell has "reviewed thousands of disciplinary actions and

terminations and [is] not aware of any instance that an ASM has closed out a Customer Care complaint about himself/herself and not contacted the customer." (Id. ¶ 50.)

Based on this record evidence, we conclude that Lowe's has satisfied its burden of "provid[ing] a legitimate, non-discriminatory reason for its [termination of Plaintiff]." Fowler, 19 F.4th at 299 (citing Walton, 168 F.3d at 668). Consequently, Plaintiff may only "prevail at summary judgment" if he has evidence that Defendant's reason for his termination "is merely a pretext, meaning evidence that could cause a jury 'either [to] (1) disbelieve the employer's articulated legitimate reasons[,] or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" Id. (alterations in original) (quoting Walton, 168 F.3d at 668).

C.    Pretext

1.    Plaintiff's evidence of pretext with regard to the March 15, 2022 eCAR

Plaintiff's evidence of pretext "must indicate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons' to satisfy the factfinder that the employer's actions could not have been for nondiscriminatory reasons." Willis, 808 F.3d 644-45 (quoting Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994)). "Alternatively, the second way a plaintiff can establish pretext is to point to evidence that would allow a factfinder to believe that an invidious discriminatory reason was 'more likely than not a motivating or determinative cause' of the employer's action." Id. at 645 (quoting Fuentes, 32 F.3d at 764). "Specifically, the plaintiff can show pretext this way by presenting evidence 'with sufficient probative force' so as to allow the factfinder to 'conclude by a preponderance of the evidence that age was a motivating or determinative factor.'" Id. (quoting Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 644-45 (3d Cir. 1998)). "Pointing to evidence

demonstrating any of the following satisfies this second way to prove pretext: (1) the defendant previously discriminated against the plaintiff; (2) the defendant discriminated against others within the plaintiff's protected class; or (3) the defendant has treated similarly situated, substantially younger individuals more favorably." Id. (citing Simpson, 142 F.3d at 645)).

Lowe's argues that Plaintiff cannot show that its articulated reasons for issuing the March 15, 2022 final warning were false because he admitted to the conduct and violations of Lowe's standards. See Norman v. Kmart Corp., 485 F. App'x 591, 593 (3d Cir. 2012)) (stating that the plaintiff could not show that the defendant's reason for firing her was false because she admitted committing the violations of defendant's policies for which she was fired). Plaintiff admits that he made a mistake when he initialed the Till Log worksheet to indicate that he had secured the bag from register 2 in the safe at 10:15 p.m. because that he did not drop the bag from register 2 into the safe. (See Def. Ex. 9 at 4 of 5; Konowal Dep. at 84-86.) Plaintiff also admits that he left the safe open when he exited the administrative office and did not set the alarm. (Konowal Dep. at 83, 229.) However, while Plaintiff concedes that he engaged in the conduct that led to his March 15, 2022 Final Warning, he contends that the record evidence indicates "weaknesses, implausibilities, inconsistencies, incoherencies, [and] contradictions" in Wysin's giving him a Final Warning for this conduct. See Willis, 808 F.3d at 644 (quoting Fuentes, 32 F.3d at 765).

Initially, Plaintiff contends that there is evidence that Wysin failed to follow Lowe's policies and procedures in giving him a Final Warning for this conduct. Plaintiff asserts that his conduct constituted a Class C, rather than a Class A, violation of Lowe's policies and procedures.[1] (Konowal Dep. at 94.)

---

[1] According to Lowe's' Corrective Action Procedure, a first Class C Violation would result in an initial warning, but a first Class A violation could result in a Final Warning or Termination. (See Def. Ex. 12 at 3 of 6.)

Plaintiff further asserts that there is evidence that Wysin failed to follow Lowe's corrective action policy when he presented him with the March 15, 2022 eCAR.  Specifically, he points to evidence that Lowe's recommends that its Store Managers discuss all of an employee's actions and behaviors when they present an eCAR to the employee.  (Jewell Dep. (Pl. Ex. I) at 95.)  Lowe's also requires the Store Manager to provide the employee with "expectations of future behavior to improve conduct or performance."  (Id. at 188.)  In addition, Lowe's' Corrective Action Procedure states that "eCARs should include specific facts (dates, times, actions, etc), impact on the business, and expectations."  (Pl. Ex. N at 4 of 6.)  Wysin reviewed the March 15, 2022 eCAR with Plaintiff on March 19, 2022.  (Wysin Dep. at 254-55.)  Wysin does not have a specific recollection of whether he showed the eCAR to Plaintiff during this meeting.  (Id. at 255-56.)  Wysin discussed Plaintiff's conduct with him and told him that he would have 60 minutes following the meeting to enter comments about the incident on the eCAR.  (Id. at 257-59.)  However, Wysin did not review with Plaintiff the policies and procedures that he believed Plaintiff had violated.  (Id. at 261; Konowal Dep. at 102.)  Furthermore, the eCAR itself does not state which of Lowe's' policies and procedures Plaintiff violated.  (See Def. Ex. 9.)

Plaintiff also argues that the evidence of record shows weaknesses, implausibilities, inconsistencies, incoherencies, and contradictions in Wysin's giving him a Final Warning for this conduct, see Willis, 808 F.3d at, 644 (citation omitted), because his conduct did not justify a Final Warning and he had never been disciplined by Lowe's before this incident.  (See Konowal Decl. (Pl. Ex. B) ¶ 25.)  Plaintiff maintains that the Final Warning was  not justified because he was not required to set the alarm in the office that holds the safe since he shut the door to that office when he left it, thereby securing it, and because he was going back and forth between

offices.  (Id. at 83-84.) He states in his Declaration that he was "not aware of any managers on duty who were trained or instructed to" lock the door to the cash office "every time [they] entered and left . . . to prepare the bag drop at the end of the night."  (Konowal Decl. ¶ 11.) Plaintiff also asserts that Wysin gave him the Final Warning for making a mistake with respect to the till bag for register 2 being checked off on the Till Log worksheet even though the till bag was checked off by the head cashier, Eric Hernandez, not by Plaintiff.  (Id. ¶¶ 10, 21-22, 33.) Plaintiff states that his mistake was "not counting the bag that Mr. Hernandez checked off as being picked up at register #2."  (Id. ¶ 22.)  Plaintiff maintains that Wysin "did not tell [him that he] did anything else wrong."  (Id.)  Plaintiff asserts that he is not aware of any policy of Lowe's that would address discipline in connection with a manager on duty making this type of mistake, or that would address a situation, such as the one here, where cash was mistakenly left in a locked cash register overnight.  (Id. ¶¶ 29-31.)

Plaintiff further maintains that he was trained in Lowe's' progressive discipline policy and understands that "it is not normal under the progressive discipline policy to skip discipline steps and issue a final warning for a first infraction."  (Id. ¶ 36.)  Instead, Plaintiff was trained by Lowe's that "[t]he normal course of associate discipline under the policy is to follow the progressive steps, applying the appropriate discipline under the circumstances."  (Id. ¶ 38.) Plaintiff believes that Lowe's reserves Final Warnings "for the most serious employment infraction" and that a Final Warning "signals to the associate that he is 'on his last legs', and essentially out the door."  (Id. at 35.)  After a Final Warning, "[t]he most minor policy violation will result in termination."  (Id.)

Plaintiff also argues that a jury could find that Lowe's' reason for his Final Warning was pretext because a younger employee who engaged in the same conduct received lesser discipline.

14

See Willis, 808 F.3d at 645 (noting that a plaintiff can show pretext by pointing to evidence that "the defendant has treated similarly situated, substantially younger individuals more favorably" (citing Simpson, 142 F.3d at 645)).  Eric Hernandez, the head cashier, was given a written warning for his conduct on March 12, 2022.  (See Def. Ex. 13 at 2 of 3.)  Hernandez was in his early 40s at that time.  (Konowal Decl. ¶ 49.)  The eCAR given to Hernandez states that "[o]n 3/13/22 head cashier Dawn was putting the money in the registers around 6[:]40am she found register 2's bag still in the till."  (Def. Ex. 13 at 3 of 3.)  The eCAR continues "[o]n 3/12/22 Eric was the closing head cashier[.]  CCTV was reviewed[.]  At 9[:]54pm Eric bagged up register 1[.] 9[:]58pm he walked away without grabbing register 2's bag[.]  Eric signed the till log sheet for register 2 as if he turned [it] in[.]"  (Id.)  It was Hernandez's "responsibility to pick up the register-bags and bring them to the cash office during closing."  (Konowal Decl. ¶ 5.)  On March 12, 2022, Hernandez gathered the till bags throughout the store and brought them to Plaintiff in the administrative office.  (Id. ¶¶ 10, 12.)  Hernandez checked off register 2 on the Till Log worksheet, indicating that he had picked up the till bag for register 2.  (Id. ¶ 21.)

We conclude that there is record evidence that Wysin failed to follow Lowe's policies with respect to: (1) the level of discipline that he gave Plaintiff, in that he gave him a Final Warning for a first offense; and (2) the eCAR and associated meeting with Plaintiff wherein he did not identify the specific policies and procedures of Lowe's that Plaintiff violated.  We further conclude that there is record evidence that Wysin treated a younger employee who engaged in very similar conduct to Plaintiff more favorably than Plaintiff, in that he gave a lesser discipline to Hernandez, who initialed the Till Log worksheet indicating that he had picked up the till bag for register 2 before giving the Till Log worksheet and the other bags to Plaintiff.  We conclude,

accordingly, that the evidence of record reflects a genuine issue of material fact regarding whether one of Lowe's' stated reasons for terminating Plaintiff's employment is pretext.

        2.     Plaintiff's evidence of pretext with respect to his April 29, 2022 termination eCAR

Defendant maintains that Plaintiff was fired for verbally abusing a customer and closing out the customer's Customer Care line complaint without resolving the complaint or bringing it to anyone else's attention so that it could be resolved.  As we discussed above, Plaintiff was terminated after Wysin discovered that Plaintiff had closed out a customer complaint about Plaintiff without resolving the complaint with the customer or involving another store manager, even though the customer specifically asked to hear from another store manager.  (Def. Ex. 6 at 4 of 6.)  The customer called Lowe's Customer Care line on April 22, 2022 to complain that Plaintiff was rude to him and called him a liar regarding a problem the customer had with a riding lawnmower.  (Id.)  When the customer did not receive a response to this complaint, he called Wysin and told him what had happened.  (Id.)  Wysin logged into Lowe's Customer Care management system and discovered that Plaintiff had closed out the customer's complaint without first contacting the customer.  (Id.)  Wysin fired Plaintiff for his conduct in failing to follow through, because Plaintiff should have partnered with Wysin or another ASM to speak with the customer rather than closing out the complaint without alerting anyone.  (Id. at 3-4 of 6.)  Wysin further explained in his Declaration that, during his time as Store Manager at Lowe's' Langhorne store, he was not aware of any other instance in which (1) "an ASM has closed a Customer Care complaint about themselves without contacting the customer," (2) a customer "contacted [him] to complain that they did not receive a response to their Customer Care complaint," or (3) "a Lowe's ASM verbally abused a customer."  (Wysin Decl. ¶¶ 21-23.)

Plaintiff contends that the record evidence establishes that Lowe's' stated reason for his termination is implausible or inconsistent. He relies on his own Declaration. He states in his Declaration that Lowe's has no written policies regarding "how to handle customer complaints or when to close them out." (Konowal Decl. ¶ 42.) He also states that he was trained by another manager with respect to closing out customer complaints and that he always closes out complaints the way he was trained. (Id. ¶ 43.) He further maintains that Lowe's did not have a policy regarding when a customer complaint should be escalated or when the store manager should be involved in resolving the complaint. (Id. at 45.) However, he has presented no evidence that Lowe's permits customer complaints to be closed without anyone in Lowe's management reaching out to the customer. Considering the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, Jacobs, 8 F.4th at 192, we conclude that Plaintiff has failed to "point to evidence that would allow a factfinder to disbelieve" Loew's' reason for his termination, i.e., that Plaintiff has failed to present evidence of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Lowe's'] proffered legitimate reasons" for his termination that would "satisfy the factfinder that the employer's actions could not have been for nondiscriminatory reasons." Willis, 808 F.3d at 644-45 (quotation omitted).

### 4.    Pretext – other people in Plaintiff's protected class

As we discussed earlier, pretext can also be shown through evidence that "the defendant discriminated against others within the plaintiff's protected class." Id. at 645 (citing Simpson, 142 F.3d at 645). Plaintiff argues that there is record evidence that Lowe's discriminated against other individuals in his protect class. He relies on evidence regarding Gary Kolber, who was fired by Lowe's on March 23, 2022, after he had worked for Lowe's for 21 years and had been a

supervisor in the Langhorne store's plumbing department from 2016 until March 23, 2022. (Kolber Decl. (Pl. Ex. E) ¶¶ 1-2.) Kolber had never been disciplined by Lowe's prior to his termination. (Id. ¶ 2.) Kolber was 60 years old in 2022. (Id. ¶ 3.) Kolber was terminated because he refused to work as a greeter at the entrance to the Langhorne store. Kolber explains that around 11:00 a.m. on the Saturday before he was fired, he was closing a large sale of plumbing fixtures when ASM Harold Henriquez called him and told him to immediately go to the front of the store to act as a "greeter." (Id. ¶ 4.) At that time, Kolber also had a customer waiting and another eight customers in the plumbing aisles who were asking him questions. (Id. ¶ 5.) Kolber did not have any help in his department that day. (Id.) Kolber told Henriquez that he was in the middle of a large sale and could not leave that customer, or the other customers who were waiting in line, until he was finished. (Id. at 6.) The next day, Wysin gave Kolber a verbal warning about the incident. (Id. ¶ 9.) At Wysin's request, Kolber sent Wysin an email explaining the incident and apologizing. (Id.¶ 10.) Several days later, Wysin terminated Kolber over this incident, on the grounds that Kolber had been insubordinate to Henriquez. (Id. ¶ 11.) Kolber's termination eCAR states that he was fired because he "was asked to perform the task of being greeter for one hour. He refused and told the ASM that he wouldn't do it." (Def. Ex. 15 at 3 of 5.) The eCAR also includes a statement from Henriquez, the ASM who asked Kolber to act as a greeter:

> On Saturday February 26th 2020[,] I reach[ed] out [to] the associate name[d] Gary to follow up [on] the greeter schedule, which was set up [so that he would] participate from 12-1 to greet and welcome the customers[.] Gary refuse[d] to participate, and was yelling over the phone; he justifies about he has a lot [of] customer[s] to tak[e] care of, which I understand and I explain[ed] to him [that] once he gets done with the customer[s], he can come to the front of the store to start[] his hour as a greeter[.]
>
> He [kept] yelling and talking loudly and it was at th[at] time when he said he d[id]n't care about this greeter time, because it wastes his time with the

> department and he has more important things to do than this. He was fully
> disagreeing with the greeting program and he mentioned he [didn't] care
> [whether] I or any other ASM document[ed] [him] for [his] actions[.] "You can
> write me up in the system[.]" I'm not going to be a greeter at all[.]

(Id. at 5 of 5.) The eCAR also includes a statement added by Kolber that the incident occurred

when he: "was paged by Harold at 11:00am to go up front and be a greeter. I told him I was by

myself in fashion bath dept. and would not leave my customers to be a greeter. I said a few

words to him which I am sorry that I did. We all need to work as a team on go[ing] upfront to be

a greeter." (Id. at 4 of 5.)

Defendant has submitted evidence that a younger employee, 32-year-old Corinne Hansen,

was terminated for identical conduct a week after Kolber was terminated. (See Def. Ex. 17 at 7.)

Hansen's termination eCAR states that she "refused to assist customers outside of her

department when asked to greet customers. She told our ASM that she was only hired to work in

the paint department and will not act as a greeter because she viewed it as a waste of time."

(Def. Ex. 16 at 3 of 4.) Hansen's eCAR also contains her statement in response:

> I apologize for the greeter issue this morning. While I understand higher up
> corporate would like to pull employees from their departments for 1 hour to greet
> people at the front of the store, I do not feel that is appropriate. I am trained to
> work in the paint department, and my skills are best utilized helping customers in
> those [a]isles. That is my job that I enjoy and am competent in fulfilling. By
> standing at the front of the store, I'm not able to answer questions about other
> departments that I know nothing about meanwhile robbing the customers in the
> paint [a]isles of the knowledge I'd be able to share.

(Id. at 4 of 4.) Since there is no evidence that Lowe's treated Kolber differently than a much

younger employee who committed the same misconduct, we conclude that the record evidence

does not support Plaintiff's contention that Kolber was discriminated against based on his age.

Plaintiff further relies on evidence regarding former Lowe's employee John Kalinyak,

who was 71 years old when he was given a Final Warning for creating an unsafe condition.

(Def. Ex. 17 at 6; Pl. Ex. R at 2-3 of 3.)  Kalinyak's eCAR states that he "created an unsafe situation while assisting a powered equipment operator[.]  Associate was knowingly on a ladder in an aisle that was blocked off while power equipment was being used in an adjacent aisle."  (Id. at 3 of 3.)  Kalinyak resigned after he was given the Final Warning.  (Konowal Dep. at 169-70.)  Plaintiff admitted during his deposition that Kalinyak had violated proper procedure.  (Id. at 203-04.)  Plaintiff states that Kalinyak took a vacation after resigning from Lowe's and, when he returned, "he wanted just a step down and not be a department supervisor, stay there.  And he went to Brandon and asked him if he could just stay there, and Brandon said, No, you already put your note in.  You're done."  (Id. at 170.)  This evidence shows only that Kalinyak resigned after he was disciplined for a safety violation.  We conclude that Plaintiff has not presented any evidence that Kalinyak was discriminated against based on his age.

Plaintiff also relies on evidence regarding Francis Herzek, who was 67 years old when he was terminated by Lowe's.  (Def. Ex. 17 at 6.)  Plaintiff was not present when the incident leading to Herzek's termination occurred and has no personal knowledge of the reason why Herzek was terminated.  (Konowal Dep. at 206.)  Plaintiff believes that Herzek was terminated because a customer made a complaint about something he said to the customer, however, Plaintiff does not know what Herzek said.  (Id. at 173.)  According to Herzek's termination eCAR, Herzek was fired for acting "in an inappropriate and/or unprofessional manner[.]  Associate approached a customer and told the customer not to open boxes of product[.]  When the customer said that the box was already opened, associate said 'some other asshole must have opened it then', and walked away from the customer."  (Def. Ex. 19 at 3 of 4.)  This evidence shows only that Herzek was fired after using inappropriate language with a customer.  We

conclude that Plaintiff has not presented any evidence that Herzek was discriminated against based on his age.

Plaintiff also points to evidence regarding Frank Nardone's resignation from Lowe's. Plaintiff testified at his deposition that Nardone, who was an ASM, left Lowe's because he didn't feel supported by Wysin because of his age.[2]  (Konowal Dep. at 172.)  However, when Plaintiff was asked what Nardone told him, he testified that Nardone told him that "people were getting forced out, progressive discipline was being skipped . . . .  And he felt that he had to get out of there." (Id at 172-73.)  Nardone has supplied a Declaration in which he discusses his resignation from Lowe's. (Def. Ex. 18.)  Nardone states in his Declaration that he "voluntarily resigned from Lowe's on or about April 22, 2022 because [he] received a more favorable offer of employment from Giant.  Had [he] not received the offer of employment from Giant, [he] would have remained with Lowe's." (Id. ¶¶ 8-9.)  He further declares that he "never told Richard Konowal that [he] was leaving Lowe's because of age based harassment or age based discrimination by Brandon Wysin." (Id. ¶ 17.)  We conclude that Plaintiff has presented no evidence that Nardone was discriminated against based on his age.

Plaintiff further points to evidence regarding David Small's resignation from Lowe's. Small was approximately 64 years old when he left Lowe's in 2022.  (See Small Decl. ¶¶ 6, 10.) Plaintiff relies on the Declaration of Gary Kolber, who declares that Small was a workaholic who did not intend to retire. (Kolber Dec. ¶¶ 22-23.)  Kolber further states that Small did not tell him why he decided to retire. (Id. ¶ 24.)  Small states in his own Declaration that he "voluntarily

---

[2] Plaintiff states in his Memorandum that Nardone was more than 40 years old when he left Lowe's but does not cite to any record evidence to support this statement.  (See Pl. Mem. at 41.)  The only evidence we have regarding Nardone's age is Plaintiff's statement, in his deposition, that Nardone had balding hair and looked like he was in his mid-40s. (Konowal Dep. at 211.)

resigned from Lowe's on or about February 4, 2022, as the Store Manager at the Lowe's Langhorne, Pennsylvania store." (Small Decl. ¶ 10.) He further states in his Declaration that he "was not forced into retirement by anyone at Lowe's" and that he "never told Richard Konowal that [he] was retiring because of harassment or discrimination." (Id. ¶¶ 13, 16.) Thus, Plaintiff has pointed to no evidence that Small was discriminated against based on his age.

$onsidering the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, Jacobs, 8 F.4th at 192, we find that Plaintiff has not identified evidence in the record that Lowe's "discriminated against others within the plaintiff's protected class," Willis, 808 F.3d at 646 (citing Simpson, 142 F.3d at 645)). We conclude, accordingly, that Plaintiff has failed to satisfy his burden of responding to the Motion for Summary Judgment by pointing to evidence that would be sufficient to "allow a factfinder to believe that an invidious discriminatory reason was 'more likely than not a motivating or determinative cause' of [Lowe's'] actions." Fowler, 19 F.4th at 299 (citing Walton, 168 F.3d at 668). We further conclude that Plaintiff has failed to show that there is a genuine issue of material fact regarding whether Lowe's stated nondiscriminatory reason for his termination, i.e., his closing a customer's complaint about himself without contacting the customer or involving Wysin or another ASM, is pretext.

## IV.    CONCLUSION

For the reasons stated above, we conclude that Plaintiff has met his burden of showing a prima facie case of discrimination in violation of the ADEA. See Fowler, 19 F.4th at 299 (citation omitted). We further conclude that Defendant has met its burden of establishing that it had "a legitimate, non-discriminatory reason for its [termination of Plaintiff]." Id. (citation omitted). We also conclude that Plaintiff has not pointed to any evidence that Lowe's

legitimate, non-discriminatory reason for his termination was pretext.  <u>Id.</u> (quotation omitted).

Therefore, we grant Lowe's' Motion for Summary Judgment.  An appropriate order follows.

BY THE COURT:

/s/ John R. Padova
_____
John R. Padova, J.